Joseph Levy and Rachel Levy v. Commissioner.
Levy v. Commissioner
Docket No. 23748.
United States Tax Court
1951 Tax Ct. Memo LEXIS 247; 10 T.C.M. (CCH) 374; T.C.M. (RIA) 51114; April 30, 1951
*247 Gerald L. Wallace, Esq., 14 Ledge Road, Old Greenwich, Conn., for the petitioners. Thomas R. Charshee, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion This proceeding involves income tax deficiencies and fraud penalties as follows: Year
Deficiency
Penalty
1941
$ 598.61
1942
$ 5,155.62
2,577.81
1943
10,358.17
5,196.19
1944
3,830.47
5,175.56 The petitioners do not contest the deficiency determined by respondent for any of the years involved but do contest the assessment of the fraud penalties. Findings of Fact The petitioners are husband and wife and are residents of the State of New York. They filed joint income tax returns for the years involved with the collector of internal revenue for the third district of New York. Joseph Levy, hereinafter referred to as the petitioner, immigrated to this country from Greece in about 1912, when he was approximately twelve years of age. His formal education did not extend beyond the sixth grade in New York public schools. Because of financial conditions he was required to begin work at an early age. After working at odd jobs for several years petitioner joined *248 with his two brothers in a partnership business of manufacturing ladies' wearing apparel. The business was operated as a partnership by petitioner and his brothers under the name of Leybro Manufacturing Company, hereinafter referred to as Leybro, until it was incorporated in 1945. In December 1940 petitioner entered into an agreement with two associates, Thomas Catlin and Ezra M. Epstein, both of whom were then employed as salesmen for Leybro, whereby they formed a corporation known as Nancy-Belle, Inc., to manufacture children's sleeping garments. The company was capitalized at $9,000, each of the organizers paying in $3,000 for capital stock. It was agreed that the three organizers, or their nominees, were at all times to comprise the board of directors and officers of the company. Initially, the officers were to be Ezra M. Epstein, president, Thomas Catlin, secretary and vice-president, and Thomas J. Johnson, "nominee of Joseph Levy," treasurer. All checks of the corporation were to be signed by either Catlin or Epstein and countersigned by Johnson as petitioner's nominee. It was further agreed that the drawings of the three officers should be equal in amount. Petitioner's stock *249 was issued in Johnson's name and he endorsed it over to petitioner. Johnson had been employed by Leybro since about 1930. He continued in the employment of that company throughout the taxable years under consideration and after the organization of Nancy-Belle, Inc., he performed services for both companies. The books of Nancy-Belle, Inc., show distributions of profits to Johnson, as petitioner's nominee, of $3,180 in 1941, $7,573.34 in 1942, $11,260 in 1943 and $9,055 in 1944. In his income tax returns for 1942, 1943 and 1944 (the 1941 return is not in evidence) Johnson reported the receipt of salary and other compensation for personal services from Nancy-Belle, Inc., and Leybro Manufacturing Company as follows: Year
Name of company
Amount
1942
Nancy-Belle, Inc. and Leybro
Manufacturing Co.
$11,320
1943
Nancy-Belle, Inc.
9,000
Leybro Manufacturing Co.
2,860
1944
Nancy-Belle, Inc.
9,055
Leybro Manufacturing Co.
3,380 Johnson's salary from Leybro was not over $75 per week. The taxes shown to be due on Johnson's returns to the extent that they were attributable to the distributions which he received from Nancy-Belle, Inc., were paid by Leybro. *250 For that purpose Johnson endorsed over to Leybro checks issued to him by Nancy-Belle, Inc., in the amount of approximately $5,800. During 1943, 1944 and 1945 Johnson opened savings accounts in five different New York banks. He had a total balance in those accounts at September 10, 1946, of approximately $30,000. About $11,000 of the deposits were directly traceable to checks issued to Johnson by Nancy-Belle, Inc. The source of the other deposits was not ascertained. In the early part of 1945 a disagreement arose between petitioner and Catlin and Epstein over the division of the profits from Nancy-Belle, Inc. In September 1945 petitioner filed suit against Catlin and Epstein, alleging that they had made distributions to themselves in excess of the amounts to which they were entitled under the agreement of December 17, 1940 (the agreement under which Nancy-Belle, Inc., was organized) and that: "* * * Upon information and belief, the amounts withdrawn by the defendants during said period approximate $1,000. per month by each of the defendants in excess of the drawings permitted to Thomas J. Johnson, as plaintiff's nominee; * * *" In settlement of this suit, out of court, Catlin *251 and Epstein paid petitioner $5,589.92 as the additional amounts of profits from Nancy-Belle, Inc., due him for 1945. As part of that agreement petitioner sold his stock in Nancy-Belle, Inc., to Catlin and Epstein and withdrew from that business. Johnson remained with Nancy-Belle, Inc., until his death in the latter part of 1946 or early in 1947. After petitioner's disagreement with Catlin and Epstein bad feeling developed between him and Johnson and he requested Johnson to turn over to him all of the distributions which he, Johnson, had received from Nancy-Belle, Inc., as petitioner's nominee. On September 10, 1946, Johnson wrote petitioner a letter reading in part as follows: "Dear Mr. Levy: During the period from December 31, 1940, to January 1, 1946, I received from Nancy-Belle, Inc., as drawings, salaries and wages the following amounts: 1941
$4,000.00
1942
9,000.00
1943
9,000.00
1944
9,055.00
1945
4,911.67
$35,966.67 and have paid to the State of New York and the Collector of Internal Revenue for the United States Government, the taxes due to them respectively on said payments. "In view of the recent change in our business associations, you *252 have requested that I pay over to you the monies received by me from Nancy-Belle, Inc., claiming a moral obligation on my part to do so, for the reason that you made it possible for me to receive said income. Regardless of the merits of your request, I am perfectly agreeable to turn over to you the amounts received as aforementioned, less the amounts which you have already received therefrom, totaling $9273.34, as well as the amounts of taxes paid by me thereon, which total $4955.60, and the expenses incurred by me with respect thereto, amounting to $1875.00. "I hand you herewith my checks, representing such differences, and totaling the sum of $19,862.73, on the understanding and agreement, however, that you will make timely report to the taxing authorities of the receipt of these amounts, and that you will make proper and appropriate payment of any taxes which may be due from you to any State or to the United States Government, arising out of the receipt of such monies from me. Whether your income from all sources for the above enumerated years exceeded mine, and whether there is a larger tax payable from you on the receipt of such monies than was paid by me, are matters as to *253 which, of course, I have no knowledge." By supplemental letter written to petitioner on the same date Johnson stated that upon petitioner's request he would make application for refunds of federal and New York State income taxes and pay over to petitioner any amounts that he might receive by reason thereof. On about September 9, 1946, Johnson made withdrawals from the savings accounts referred to above in the aggregate amount of $20,800. In his returns for 1941, 1942, 1943 and 1944 petitioner did not report as income any of the distributions which Johnson had received from Nancy-Belle, Inc. On October 22, 1946, he filed amended returns for those years, accompanied by a letter addressed to the collector of internal revenue for the third district of New York, reading in part as follows: "There are enclosed herewith amended returns for the Calendar Years 1941, 1942, 1943 and 1944, due to the inclusion of salary received from Nancy Belle, Inc. of 38 West 26th St., New York, N. Y.
"This compensation was received by Mr. Thomas J. Johnson, as my nominee, who reported same in his returns for the Calendar Years 1941, 1942, 1943 and 1944. The enclosed amended returns have included *254 his salary as part of my taxable income resulting in the following tax deficiencies and interest due thereon: Calendar
Tax
Year
Deficiency
Interest
1941
$ 1,798.70
$ 496.14
1942 & 1943
7,873.24
1,226.90
1944
6,520.65
624.91
Totals
$16,192.59
$2,347.95
"There is enclosed herewith check for the amount of $18,540.54 covering the tax deficiency of $16,192.59 plus interest of $2,347.95." The income reported by the petitioners in their original returns, the additional amounts reported in their amended returns and the net income as finally determined by the respondent, the correctness of which petitioners now concede, are as follows: Original
Amended
Respondent's
Year
return
return
determination
1941
$21,725.11
$ 25,211.71
$ 24,391.71
1942
58,755.96
67,755.96
65,757.58
1943
64,283.84
73,283.84
76,948.78
1944
99,061.99
108,116.99
106,580.81
The deficiencies determined by respondent for the years 1941, 1942, 1943 and 1944 to the extent that they are attributable to the omission from petitioner's original returns of distributions made by Nancy-Belle, Inc., to Johnson, as petitioner's nominee, are due to fraud *255 with intent to evade tax. Opinion LEMIRE, Judge: Since petitioners concede the correctness of respondent's determination of the deficiencies for all of the years involved, our only question is the assessment of the fraud penalties. The evidence leaves no room for doubt in our minds that petitioners' returns were fraudulent, and we have so found. Indeed, the petitioners have made but little effort to justify the serious omissions of income from their returns. They have filed no brief in this proceeding and made no argument based on the evidence of record. As we view it, the evidence permits of no other conclusion than that petitioner had his share of the profits of Nancy-Belle, Inc., distributed to Johnson as his "nominee" with the intent, if not for the sole purpose, of avoiding the payment of income taxes thereon. An attempt was made to show that this arrangement was necessary because of petitioner's difficulties with labor. It is also claimed in the petition that the distributions in question were made to Johnson as compensation for his services but that petitioner later requested Johnson to pay them over to him because of bad feeling between them. Neither of these contentions *256 merits serious consideration. Petitioner's connection with Nancy-Belle, Inc., must have been well known to all concerned. That company shared display rooms with Leybro and was completely owned and operated by the officers and employees of Leybro. Moreover, the distribution of Nancy-Belle, Inc., profits was the one feature of its operations that could most easily have been concealed from its employees. Little need be said of the claim, if seriously made, that petitioner permitted the large distributions of Nancy-Belle, Inc., profits to be made to Johnson as compensation for his, Johnson's, services. The distributions were not based on services rendered by Johnson but on a three-way division of the profits among the stockholders, in accordance with the organization agreement. Johnson apparently did not understand that these monies were for his own use for he deposited them in savings accounts so that they would be available when petitioner called for them. Then, too, the basis of petitioner's suit against Catlin and Epstein was that they had failed to distribute his, petitioner's, full share of the profits to Johnson as his nominee. The respondent's determination both as to the *257 deficiencies and as to the liability for the fraud penalties is sustained. Decision will be entered for the respondent.